UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**05CRIM. 706**

- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                :       SEALED
                                                INFORMATION
        -v-                             :
                                                05 Cr.
PETER PELUSO,                           :

                Defendant.              :

- - - - - - - - - - - - - - - - -x

*JUDGE LYNCH*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7-27-05

RACKETEERING CHARGES

**COUNT ONE**

Racketeering Violation

The United States Attorney charges:

The Enterprise

        1.    At all times relevant to this Information, PETER
PELUSO, the defendant, and others known and unknown, were members
and associates of the Genovese Organized Crime Family of La Cosa
Nostra (the "Genovese Organized Crime Family").  The Genovese
Organized Crime Family is a criminal organization whose members
and associates have engaged in numerous acts of violence and
other criminal activity, including murder, attempted murder,
robbery, extortion, labor racketeering, the financing and making
of extortionate extensions of credit and the collection of
extensions of credit through extortionate means (commonly known
as "loansharking"), witness tampering, obstruction of justice,
money laundering, and frauds of various kinds.

2.    The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.  The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere, and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The Genovese Organized Crime Family was referred to by its members and associates in various ways, including as a "cosa nostra," a "Family," and "this thing of ours."

3.    The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families."  In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

2

4.    The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City.  Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier.  Associates participated in the various activities of the crew and its members.

5.    Each Capo was responsible for supervising the criminal activities of his crew, and provided soldiers and associates with support and protection.  In return, the Capo typically received a share of the illegal earnings of each of his crew's soldiers and associates, which is sometimes referred to as "tribute."

6.    Above the Capos were the highest-ranking members of the Genovese Organized Crime Family.  The head of the Genovese Organized Crime Family was known as the "Boss," who was normally assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes among members of the Genovese Organized Crime Family, and resolving disputes

3

between members of the Genovese Organized Crime Family and members of other criminal organizations.  At various times relevant to this Information, members of the Genovese Organized Crime Family were temporarily appointed to serve as Boss, Underboss, Consigliere, or Capo in place of an incarcerated member holding that position.  Whenever this occurred, the member holding the temporary appointment would function in an "acting" capacity for the incarcerated member, who continued to hold the "official" position in the Family.  In addition, at various times relevant to this Information, high-ranking members of the Genovese Organized Crime Family served on a committee or ruling panel, a group of high-ranking members of the Family who assisted and, at times, made decisions with or on behalf of the Boss and the Acting Boss of the Family.

        7.    The Boss, Underboss, Consigliere, and members of the ruling panel of the Genovese Organized Crime Family supervised, supported, protected and disciplined the Capos, Soldiers and Associates, and regularly received reports regarding their various activities.  In return for their supervision and protection, the Boss, Underboss, Consigliere, and members of the ruling panel typically received part of the illegal earnings of each crew.

## The Defendant

8.     PETER PELUSO, the defendant, was at all times relevant to this Information an associate of the enterprise, the Genovese Organized Crime Family, and a lawyer whose practice included criminal defense, among other areas.  PELUSO regularly used his status as a lawyer to avoid law enforcement scrutiny when conducting and furthering the business of the enterprise by, among other things, delivering messages and carrying directives between and among other members and associates of the enterprise, including those who were incarcerated following their convictions for crimes related to the enterprise.  In addition, PELUSO conducted the business of the enterprise in more traditional ways as well, such as by assisting in the collection of monies owed to members and associates of the enterprise as a result of criminal schemes.  Among PELUSO's criminal activities were participation in a murder, participation in conspiracies to extort money from businesses and individuals, loansharking, participation in conspiracies to commit money laundering, witness tampering, and obstruction of justice, as well as the commission of those crimes.

## Purposes of the Enterprise

9.     The purposes of the enterprise included the following:

a.     Enriching the leaders, members, and associates of the enterprise through, among other things: (i) the extortionate control of businesses, labor unions, persons, and property through threats of physical and economic harm; (ii) the financing, extension and collection of extortionate extensions of credit, commonly known as "loansharking"; (iii) the control of businesses through the collection of loansharking debts; (iv) the operation of illegal gambling businesses; (v) theft and robbery; (vii) mail fraud; and (vii) money laundering;

b.     Preserving and augmenting the power, territory, and financial profits of the enterprise through murder, intimidation, violence, and threats of physical and economic harm; and

c.     Keeping victims and citizens in fear of the enterprise and its leaders, members and associates by: (i) identifying the enterprise, its members and associates, with La Cosa Nostra or the "Mafia"; (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

<u>Means and Methods of the Enterprise</u>

10.   Among the means and methods by which the defendant and other enterprise members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.    To protect and expand the enterprise's business and criminal operations, members and associates of the enterprise murdered, threatened to murder, and assaulted persons -- including individuals who were members of the enterprise itself -- who engaged in activity that threatened (i) the power and criminal activities of the enterprise and the power and criminal activities of fellow LCN Families, (ii) the power of leaders of the enterprise, and (iii) the flow of criminal proceeds to the leaders of the enterprise.

b.    Members and associates of the enterprise promoted a climate of fear in the community through threats of economic harm and violence.

c.    Members and associates of the enterprise generated income for the enterprise through, among other things, (i) extortion; (ii) loansharking; (iii) money laundering; (iv) the operation of illegal gambling and bookmaking businesses; (v) labor racketeering; (vi) theft and robbery; and (vii) mail fraud.

d.    Members and associates of the enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members and associates of other LCN Families.

e.    So as to avoid law enforcement scrutiny of the enterprise's criminal activities, members and associates of the enterprise conducted meetings surreptitiously, typically

7

using coded language to make arrangements for meetings, meeting
at rest stops along highways and at diners, and engaging in "walk
and talks" or other methods designed to thwart law enforcement
scrutiny.  Members and associates of the enterprise also
attempted to locate concealed listening devices and other items
used by law enforcement to investigate the Genovese Organized
Crime Family and other LCN Families.

        f.   To further avoid law enforcement scrutiny of
the enterprise's criminal activities, members and associates of
the enterprise used corrupt attorneys who were themselves
associates of the enterprise to carry confidential messages and
directives to and from other members and associates of the
enterprise, many of whom were incarcerated and therefore had
limited ability to communicate with others in the enterprise.
Members and associates of the enterprise, whether incarcerated or
not, relied upon these corrupt attorneys to, among other things,
use their status as attorneys to deceive law enforcement and to
prevent their conversations, messages, and orders from being
intercepted.  In addition, members and associates of the
enterprise sought to include those attorneys in their illegal
activities in an attempt to further conceal from law enforcement
the criminal schemes committed by the enterprise.

        f.   Members and associates of the enterprise
attempted to identify and did identify individuals suspected of

providing, or deemed likely to provide, information to law enforcement about the enterprise, its members and activities, and about other LCN Families.  To that end, members and associates of the enterprise would, among other things, rely upon corrupt attorneys who were themselves associates of the enterprise to help the enterprise identify individuals providing information to law enforcement concerning the enterprise.

g.  To conceal their receipt of money generated from their criminal activities, members and associates of the enterprise concealed their ownership of various assets that were purchased with proceeds of their criminal activities.

<u>The Racketeering Violation</u>

11.  From at least in or about the early 1980s, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 10 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, intentionally, and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and

1961(5), that is, through the commission of the following racketeering acts:

<u>The Pattern of Racketeering</u>

12.   The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

**<u>Racketeering Act One – Murder Of Ralph Coppola</u>**

13.   PETER PELUSO, the defendant, committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act One:

a.   From in or about Summer 1998, up through and including in or about September 1998, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly conspired to murder Ralph Coppola, in violation of New York State Penal Law, Sections 105.17 and 125.25.

b.   In or about September 1998, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, intentionally, and knowingly did commit an act involving murder and aided and abetted murder, to wit, with intent to cause the death of another person, did cause the death of Ralph Coppola, in violation of New York State Penal Law, Sections 125.25 and 20.00.

**Racketeering Act Two –**
**Extortion Of Victim-1 And Company-1**

14.    PETER PELUSO, the defendant, committed the
following acts of racketeering, either one of which alone
constitutes the commission of Racketeering Act Two:

a.    In or about 2003 and 2004, in the Southern
District of New York and elsewhere, PETER PELUSO, the defendant,
and others known and unknown, unlawfully, willfully, and
knowingly combined, conspired, confederated, and agreed together
and with each other to commit extortion, as that term is defined
in Title 18, United States Code, Section 1951(b)(2), by obtaining
money and property from and with the consent of another person,
to wit, Victim-1 and Company-1, a construction contractor engaged
in interstate commerce, which consent would have been, and was,
induced by the wrongful use of actual and threatened force,
violence and fear, and thereby would and did obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3), to wit, PELUSO and others agreed to use
threats of violence to force Victim-1, on behalf of Company-1, to
pay $150,000 to a roofing contractor who had purportedly
performed services for Company-1 but had not been paid, in
violation of Title 18, United States Code, Section 1951.

b.    In or about 2003 and 2004, in the Southern
District of New York and elsewhere, PETER PELUSO, the defendant,

11

and others known and unknown, unlawfully, willfully, and

knowingly attempted to commit extortion, as that term is defined

in Title 18, United States Code, Section 1951(b)(2), by obtaining

money and property from and with the consent of another person,

to wit, Victim-1 and Company-1, which consent would have been,

and was, induced by the wrongful use of actual and threatened

force, violence, and fear, and thereby would and did obstruct,

delay, and affect commerce, and the movement of articles and

commodities in commerce, as that term is defined in Title 18,

United States Code, Section 1951(b)(3), to wit, PELUSO and others

attempted to use threats of violence to force Victim-1, on behalf

of Company-1, to pay $150,000 to a roofing contractor who had

purportedly performed services for Company-1 but had not been

paid, in violation of Title 18, United States Code, Sections 1951

and 2.

### Racketeering Act Three –
### Extortion Of Victim-2 And Company-2

15.   PETER PELUSO, the defendant, committed the

following acts of racketeering, either one of which alone

constitutes the commission of Racketeering Act Three:

a.   From in or about January 2004, up through and

including in or about January 2005, in the Southern District of

New York and elsewhere, PETER PELUSO, the defendant, and others

known and unknown, unlawfully, willfully, and knowingly combined,

conspired, confederated, and agreed together and with each other

to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, Victim-2 and Company-2, a bakery involved in interstate commerce, which consent would have been, and was, induced by the wrongful use of actual and threatened force, violence and fear, and thereby would and did obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, PELUSO and others agreed to use threats of economic harm to force Victim-2, on behalf of Company-2, to make payments to a member of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Section 1951.

       b.    From in or about January 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, Victim-2 and Company-2, which consent would have been, and was, induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce, and the movement of articles and

13

commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, PELUSO and others used threats of economic harm to force Victim-2, on behalf of Company-2, to make payments to a member of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1951 and 2.

### Racketeering Act Four – Operation Of Loansharking Business

16.   PETER PELUSO, the defendant, committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Four:

a.   From in or about March 2003, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, in violation of Title 18, United States Code, Section 892.

b.   From in or about March 2003, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to participate in the use of extortionate means to collect and

14

attempt to collect extensions of credit, as those terms are defined in Title 18, United States Code, Section 891, in violation of Title 18, United States Code, Section 894.

## Racketeering Act Five – Money Laundering Conspiracy

17. From in or about January 2003, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, did combine, conspire, confederate, and agree together and with each other to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, loansharking, in violation of Title 18, United States Code, Sections 892 and 894, extortion, in violation of Title 18, United States Code, Section 1951, and the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, PELUSO agreed with others to assist a member of the Genovese Organized Crime Family in transferring funds through various businesses in order

to conceal and disguise the nature and source of the funds, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h).

## Racketeering Act Six – Witness Tampering (Witness-1)

18.   PETER PELUSO, the defendant, committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Six:

a.   From in or about January 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to use intimidation, threaten, and corruptly persuade another person, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese Organized Crime Family agreed to corruptly persuade Witness-1 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to an assault on Witness-1 in which a portion of Witness-1's ear was bitten off by a member of the

Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and (k).

b.    From in or about January 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly did use intimidation, threaten, and corruptly persuade another person, and did attempt to do so, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese Organized Crime Family corruptly persuaded Witness-1 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to an assault on Witness-1 in which a portion of Witness-1's ear was bitten off by a member of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and 2.

**Racketeering Act Seven – Witness Tampering (Witness-2)**

19.   PETER PELUSO, the defendant, committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Seven:

a.    From in or about Summer 2002, up through and including in or about January 2003, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to use intimidation, threaten, and corruptly persuade another person, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese Organized Crime Family agreed to locate Witness-2, a suspected cooperating witness, in order to prevent or otherwise influence Witness-2's testimony at a federal criminal trial, in violation of Title 18, United States Code, Sections 1512(b) and (k).

b.    From in or about Summer 2002, up through and including in or about January 2003, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly did use intimidation, threaten, and corruptly persuade another person, and did attempt to do so, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law

18

enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese Organized Crime Family attempted to locate Witness-2, a suspected cooperating witness, in order to prevent or otherwise influence Witness-2's testimony at a federal criminal trial, in violation of Title 18, United States Code, Sections 1512(b) and 2.

### Racketeering Act Eight – Witness Tampering (Witness-3)

20. PETER PELUSO, the defendant, committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Eight:

a. From in or about 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to use intimidation, threaten, and corruptly persuade another person, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese

Organized Crime Family agreed to corruptly persuade Witness-3 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to an extortion of Witness-3 by a member of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and (k).

        b.    From in or about 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly did use intimidation, threaten, and corruptly persuade another person, and did attempt to do so, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese Organized Crime Family corruptly persuaded Witness-3 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to an extortion of Witness-3 by a member of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and 2.

**Racketeering Act Nine - Witness Tampering (Witness-4)**

21.   PETER PELUSO, the defendant, committed the following acts of racketeering, either one of which alone constitutes the commission of Racketeering Act Nine:

a.   From in or about 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to use intimidation, threaten, and corruptly persuade another person, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese Organized Crime Family agreed to corruptly persuade Witness-4 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to a possible extortion of Witness-4 by members of the Bonanno Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and (k).

b.   From in or about 2004, up through and including in or about January 2005, in the Southern District of

New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully and knowingly did use intimidation, threaten, and corruptly persuade another person, and did attempt to do so, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, PELUSO and other members and associates of the Genovese Organized Crime Family corruptly persuaded Witness-4 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to a possible extortion of Witness-4 by members of the Bonanno Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and 2.

(Title 18, United States Code, Section 1962(c).)

## COUNT TWO

### Racketeering Conspiracy

The United States Attorney further charges:

22.   Paragraphs 1 through 10 and 13 through 21 of this Information are repeated, realleged, and incorporated by reference as though fully set forth herein.

23.   From at least in or about the early 1980s, up through and including in or about January 2005, in the Southern

District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 10 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, intentionally, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), which pattern is set forth more fully in paragraphs 13 through 21, above, as Racketeering Acts One through Nine.  The defendant agreed that a co-conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Section 1962(d).)

<u>VIOLENT CRIME IN AID OF RACKETEERING</u>

**<u>COUNT THREE</u>**

<u>Conspiracy To Murder Ralph Coppola</u>

The United States Attorney further charges:

24.  At all times relevant to this Information, the Genovese Organized Crime Family, as more fully described in Paragraphs 1 through 10 of this Information, which are repeated,

realleged, and incorporated by reference as though set forth
fully herein, constituted an enterprise, as that term is defined
in Title 18, United States Code, Section 1959(b)(2), that is, a
group of individuals associated in fact, although not a legal
entity, which was engaged in, and the activities of which
affected, interstate and foreign commerce.

25.   At all times relevant to this Information, the
above-described enterprise, through its members and associates,
engaged in racketeering activity, as that term is defined in
Title 18, United States Code, Sections 1959(b)(1) and 1961(1),
namely, acts involving murder, in violation of New York State
Penal Law, acts indictable under Title 18, United States Code,
Sections 892, 893 and 894 (involving the making, financing, and
collecting of extortionate extensions of credit), acts indictable
under Title 18, United States Code, Section 1956 (involving money
laundering), acts indictable under Title 18, United States Code,
Section 1951 (involving extortion), and acts indictable under
Title 18, United States Code, Section 1512 (involving obstruction
of justice and witness tampering).

26.   From in or about Summer 1998, up through and
including in or about September 1998, in the Southern District of
New York and elsewhere, for the purpose of gaining entrance to
and maintaining and increasing their positions in the Genovese
Organized Crime Family, an enterprise engaged in racketeering

activity, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to murder Ralph Coppola, in violation of New York State Penal Law, Sections 105.17 and 125.25.

(Title 18, United States Code, Section 1959(a)(5).)

### OBSTRUCTION OF JUSTICE

### **COUNT FOUR**

The United States Attorney further charges:

27.   In or about 2004, in the Southern District of New York and elsewhere, PETER PELUSO, the defendant, and others known and unknown, unlawfully, willfully, knowingly and corruptly did alter, destroy, mutilate and conceal a record, document and other object, and did attempt to do so, with the intent to impair the object's integrity and availability for use in an official proceeding, to wit, PELUSO directed an individual who had committed a shooting to dispose of the firearm which had been used in the shooting.

(Title 18, United States Code, Sections 1512(c) and 2.)

_David Kelley_
_____
DAVID N. KELLEY
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v -

### PETER PELUSO,

**Defendant.**

### SEALED INFORMATION

05 Cr. ___ (GEL)

(Title 18, United States Code,
Sections 1962(c), 1962(d), 1959(a)(5),
1512(c), and 2)

<u>DAVID N. KELLEY</u>
United States Attorney.